UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLOS SOTO,

        Plaintiff,

                                    Case No. 07-CV-11929

vs.                                  HON. GEORGE CARAM STEEH

THOMAS BIRKETT, et al.,

        Defendants.

_____/

## ORDER ACCEPTING REPORT AND RECOMMENDATION (# 36) IN PART, MODIFYING REPORT AND RECOMMENDATION IN PART AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (# 24)

Plaintiff Carlos Soto, a Michigan prisoner appearing pro per, filed the present action under 42 U.S.C. § 1983, alleging that Defendants are violating his Constitutional rights by denying him the opportunity to take a shower since January 9, 2007. Soto's Complaint also mentions the Americans with Disabilities Act and the Architectural Barriers Act, but Soto raises no specific claims relating to these laws.

Soto alleges that he is wheelchair bound as a result of polio and previous gunshot wounds. Soto alleges that he has been classified to administrative segregation by the Standish Maximum Correctional Facility (SMF) Security Classification Committee, and that the shower, handbar, and shower-chair available in segregation do not accommodate his disability, particularly when considering he is not provided an attendant and must remain in full restraints. Soto also alleges the shower stalls are not large enough to accommodate his wheelchair.

On June 19, 2007, Soto filed a motion for emergency injunctive relief (Docket # 7), seeking a court order requiring the Michigan Department of Corrections to transfer him from SMF to another correctional facility to accommodate his needs as a disabled prisoner. Soto's motion for preliminary injunctive relief was referred to Magistrate Judge Mona Majzoub.   On December 17, 2007, Magistrate Judge Majzoub issued a Report and Recommendation (Docket # 25) recommending that Soto's motion be denied, finding that Soto has failed to demonstrate a substantial likelihood of succeeding on his Eighth Amendment claim of cruel and unusual punishment, that Soto has not shown that he will suffer irreparable harm if he is not transferred to another prison facility, that others will not be substantially harmed, and/or that the public interest would not be served by transferring him out of SMF.

Soto filed objections to the Report and Recommendation on January 2, 2008 (Docket # 27).  Soto's objections stated that the Magistrate Judge failed to consider that he remains fully restrained during showers and that the shower stall photographs support his contention of a failure to accommodate his disability, in that: (1) Soto is not permitted to take his wheelchair into the shower stall; (2) there are no handbars outside the shower; and (3) the stall will not accommodate both his wheelchair and the shower chair.  Soto also objected that the Magistrate Judge failed to give his pleadings proper deference, as the pleadings of a pro se litigant.  This Court found that Soto's objections were not well taken, and accepted Magistrate Judge Majzoub's Report and Recommendation denying Soto's motion for emergency injunctive relief (Docket # 29).  Soto appealed this ruling to the Sixth Circuit Court of Appeals.

On December 6, 2007, Defendants filed a motion for summary judgment (Docket #

2

24), arguing that:  (1) Soto has failed to establish a genuine issue of material fact, given that Soto has been provided with ample opportunities to shower, is stubbornly refusing to shower in an attempt to force a transfer out of SMF to a different facility and that Soto is required to remain in restraints while out of his cell because of his own disruptive and assaultive behavior; and (2) Defendants are entitled to Eleventh Amendment Qualified Immunity.

Defendants support their motion by reference to the Affidavits filed in support of their response to Soto's motion for a preliminary injunction. Specifically, Defendant Walker, an Assistant Deputy Warden, submitted an Affidavit (Docket # 21, Ex. B) which stated the following:  Unit 4 of SMF is handicap accessible, including for disabled inmates on administrative segregation status such as Soto.  *Id*. ¶ 6.  SMF's handicap accessibility has met the guidelines of the American Corrections Association and the United States Department of Justice – Americans with Disabilities Act standards for handicap accessibility.  *Id*. ¶ 3.   Prisoners on "segregation" status are required to wear restraints during all out-of-cell movement, but are still able to transfer from a wheelchair to a shower chair while using the hand bars in the showers.  *Id*. ¶ 4.   Once inside the shower the shower door is secured and the prisoner places his hands out the slot in the door and the restraints are removed by staff.  *Id*. ¶ 4.

Soto was classified to "segregation" status in January 2007 for assault and battery on staff.  *Id*. ¶ 9.  Although placed on "segregation" status, Soto was initially still kept in the general population unit (or, Unit 4) – albeit subject to segregation restrictions, including the requirement that he remain in restraints while out of his cell.  In February 2007, Soto continued to assault and threaten staff and began to refuse to use the handicap shower in

3

Unit 4, even though it was available and accessible to him. *Id.* Soto's bad behavior continued and escalated to include throwing feces on guards, masturbating towards female staff and disrupting the entire unit. *Id.* As a result, Soto was transferred out of the general population unit to an administrative segregation unit (or, Unit 2) on April 6, 2007. *Id.* Defendant Walker's Affidavit goes on to state that Soto is given an opportunity to shower 3 times a week. *Id.* ¶ 10. That Soto refused many showers but, according to prison records, has showered 16 times since he has been in segregation status. While housed in Unit 2 (the administrative segregation unit) Soto is wheeled to Unit 4 for showers, as Unit 4 contains handicapped accessible showers, but Unit 2 does not. *Id.* ¶ 9-10. During these showers, Soto made no complaints to staff nor was he unable to transfer and complete his shower. *Id.* ¶ 10. On certain occasions, Soto agreed to go over to the Unit 4 shower only to say that he was unable to transfer to the shower chair once there and refused to try. *Id.* On these occasions, staff attempted to get Soto to try different techniques to maneuver himself into the shower chair, but he continued to refuse. *Id.* ¶ 11.

In addition, Defendants reference the Affidavit of Defendant Sciotti, who was the Acting Deputy Warden of SMF during the relevant time period. (Docket # 21, Ex. A). Defendant Sciotti states the following: Soto is physically and verbally assaultive with staff and is a threat to the safety of prison staff and other prisoners. *Id.* ¶ 5. Arrangements were made to allow Soto to shower in Unit 4 (general population) while he was housed in Unit 2 (segregation), but Soto occasionally refused to go to Unit 4 because he said he could not use his hands to move from his wheelchair to the handicap shower chair. *Id.* ¶ 6. Prison staff attempted to use belly chains with Soto so that he can use his arms and hands to maneuver himself into the handicapped shower chair and offered to have two guards assist

4

Soto in transferring to a shower chair, but Soto refused to cooperate.  *Id*. ¶ 6.  Finally, Defendants reference the Affidavit of Shelley King, a Resident Unit Manager with the Michigan Department of Corrections (Docket # 21, Ex. C), which states that Soto has previously been in may institutions throughout the State of Michigan and has had continuous problems with prison staff.  *Id*. ¶ 4.

Soto filed a response to Defendants' motion for summary judgment on December 21, 2007 (Docket # 26).  Attached to Soto's response are:  (1) a job description for a Handicapped Prisoner Assistant position with the Michigan Dep't of Corrections (Ex. A); (2) a memorandum from SMF's Health Unit Manager, discussing Soto's medical needs generally and stating that if "Dr. Burtch" determines that Soto's medical needs cannot be met in a certain unit, a transfer will be requested to a new unit (Ex. B); (3) several grievances filed by Soto (Exs. C, D and F); (4) a lengthy list of special medical accommodations made by prison staff for Soto (Ex. G); and (5) correspondence between the American Friends Service Committee and prison staff regarding Soto's accommodations (Ex. H).

On May 14, 2008, Magistrate Judge Majzoub issued a Report and Recommendation (Docket # 36), finding that Defendants' motion for summary judgment should be granted as to all claims <u>except</u> as to claims against Defendants in their individual capacities. Magistrate Judge Majzoub found that Soto should be able to maintain his claims against Defendants individually, as Soto's own unsworn statements that he is unable to transfer to the handicapped shower chair while in restraints raise a triable issue of fact.  Magistrate Judge Majzoub also rejected Defendants' Qualified Immunity defense, finding that a reasonable person would know that denying an inmate the right to shower for an extended

5

period of time constitutes cruel and unusual punishment. *Id.* at 7. Defendants and Soto both filed timely objections (Docket #s 37 & 38, respectively) to the Report and Recommendation.

### Standard of Review

"A judge of the court shall make a de novo determination of those portions of a report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636 (b)(1)(C). *See also* E.D. Mich. LR 72.1(d)(2). Issues raised on objection in a perfunctory manner are deemed waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

Federal Rule of Civil Procedure 56(c) empowers the Court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of

6

2:07-cv-11929-GCS-MKM   Doc # 40   Filed 04/29/09   Pg 7 of 13   Pg ID 399

material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

<u>Discussion</u>

### A.    Soto Fails To Raise A Genuine Issue Of Material Fact

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir.1987) (per curiam) (*quoting Rhodes*, 452 U.S. at 346). The deprivation alleged "must result in the denial of 'the minimal civilized measure of life's necessities.'" *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir.1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth

7

Amendment." *Ivey*, 832 F.2d at 954.

The "core" requirements of the Eighth Amendment are "minimally adequate" necessities of civilized life, including reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Grubbs v. Bradley*, 552 F.Supp. 1052, 1222 (M.D.Tenn.1982).  To maintain a valid claim under the Eighth Amendment, Soto must establish both that he is being denied "the minimal civilized measure of life's necessities" and that Defendants have been "deliberately indifferent" to his needs. *Wilson v. Seiter*, 501 U.S. 294 (1991).  While deliberate indifference to the need for hygienic care may support an actionable Eighth Amendment claim of cruel and unusual punishment, *Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986), Soto has failed to rebut the evidence proffered by Defendants Acting Deputy Warden Sciotti, Assistant Deputy Warden Walker and Resident Unit Manager King showing that it is Soto's own assaultive behavior, refusal to shower, and stubborn unwillingness to accept reasonable accommodations – short of a prison transfer – that prevented Soto from showering regularly.  The Eighth Amendment proscribes conduct that is "obdurate and wanton."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  The evidence presented by Soto is simply insufficient to establish that Defendants acted with obduracy and wantonness.  To the contrary, the documents submitted by Soto show that prison staff went to great lengths to accommodate Soto's medical needs, while at the same time ensuring the safety and security of prison staff and of other prisoners.

Soto does not dispute that he was placed on the highest restrictive level of custody – segregation – as a direct result of his own disruptive and assaultive behavior, that included throwing human waste at prison guards and masturbating in their presence.  *See* Walker Affidavit, ¶ 9, Attachments 7-10.  Instead, Soto argues that he has "never abused

8

his shower time, and **never once** while taking a shower received any sort of misconduct for **any** assault or **any other** offense." Plaintiff's Response at 4 (emphasis in the original). Soto's argument is not well taken. Soto cannot assault and abuse prison staff while in his cell and then expect to remain totally unfettered while out of his cell for shower time. Prison guards may apply force "in a good-faith effort to maintain or restore discipline" without offending the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The record does simply does not support the conclusion that Defendants showed deliberate indifference to Soto's personal hygienic needs. On the contrary, the record clearly reflects that Soto was given regular access to handicapped showers – albeit subject to certain restrictions, necessitated by Soto's own misconduct.

Furthermore, Soto's allegation that he has not showered since January 2007 is not supported by the record. *See* Walker October 31, 2007 Affidavit, ¶ 10, Attachment 6. In particular, Assistant Deputy Warden Walker testified that Soto showered 12 times while housed in Unit 4 on segregation status and 4 times while housed in Unit 2 on segregation status. This evidence directly rebuts Soto's mere allegations that Defendants' conduct made it impossible for him to shower; Soto has failed to rebut this evidence with specific facts of his own. In light of the unrebutted evidence proffered by Defendants – including evidence of reasonable accommodations offered to and refused by Soto, evidence of legitimate security concerns requiring Soto to remain restrained while out of his cell and evidence that Soto was, in fact, actually able to shower during the time period in question – the Court finds Soto has failed to raise a genuine issue of material fact on his Eighth Amendment claim of cruel and unusual punishment. As there is no genuine issue of fact

9

in dispute, summary judgment is GRANTED in favor of the Defendants with respect to all of Soto's claims.

The Court also notes that Soto has apparently been transferred from SMF to a different prison. On September 12, 2008, Soto filed a Notice of Change of Address (Docket # 39) with the Court indicating that, as of that date, he was confined at the Huron Valley Men's Complex in Ypsilanti, Michigan. Moreover, as of the date of this Order, Michigan's Offender Tracking Information System (or "OTIS" – available at http://www.state.mi.us/mdoc/asp/otis2.html) lists Soto as being confined in the Macomb Correction Facility, at security level IV. Thus, Soto's claim for injunctive relief requesting a transfer from SMF to a new facility is now moot, since a transfer to another prison moots a prisoner's request for declaratory or injunctive relief. *Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Because Soto was transferred from SMF following Defendants' alleged misconduct in this case, his claim for equitable relief is now moot. *Preiser*, 422 U.S. at 402-03; *Kensu*, 87 F.3d at 175.

### B.   Qualified Immunity

Defendants also raise the defense of Qualified Immunity to Soto's claims, and request that summary judgment be granted on that ground as well. Qualified Immunity protects government officials acting in good faith in their official capacities. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir.1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir.1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir.1996); *Harlow v. Fitzgerald*, 457

10

U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

When determining whether a right is clearly established, this Court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other Circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by Qualified Immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

Under the circumstances in this case, the requirement that Soto remain in restraints while outside of his cell did not violate clearly established law. Defendants took precautions to ensure that Soto had adequate access to handicapped showers to maintain his personal hygiene, such as offering to secure Soto in less restrictive belly-chains (which permit greater range of motion of arms and hands) and offering prison guard assistance to help Soto transfer into the shower chair.  The Court finds that it was objectively reasonable for Defendants – in light of Soto's aggressive, disruptive and assaultive behavior – to believe that requiring Soto to remain in restraints when out of his cell was a necessary means to protect the safety of prison guards and other inmates. As such, the Court finds that Soto has failed to overcome the Qualified Immunity defense raised by Defendants, and the Court also GRANTS summary judgment to Defendants on this basis.

11

## **Conclusion**

On de novo review, the Court concludes that Soto has not raised a genuine issue of material fact as regards his Eighth Amendment claims.  Furthermore, the Court finds that Soto has failed to overcome the Qualified Immunity defense raised by Defendants. Accordingly, for the reasons set forth above, the May 14, 2008 Report and Recommendation is hereby ACCEPTED to the extent that it dismisses Soto's claims – other than those claims brought against Defendants individually – and is hereby MODIFIED to the extent that all of Soto's claims are now dismissed. Defendants' motion for summary judgment is now GRANTED, in its entirety.  Soto's claims against Defendants are hereby DISMISSED, with prejudice.

Finally, the Court holds that this dismissal constitutes a dismissal as described by 28 U.S.C. § 1915(g).  The Court additionally finds that an appeal of this order would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  For the same reasons the Court grants Defendants' motion for summary judgment, the Court discerns no good-faith basis for an appeal.  Should Soto appeal this decision, the Court will assess the $455 appellate filing fee pursuant to § 1915(b)(1).  The Court also notes that this dismissal is Soto's "third strike" for purposes of 28 U.S.C. § 1915(g).[1]  As such, Soto is barred from proceeding *in forma pauperis* by the "three-strikes" rule of § 1915(g) and shall be required to pay the $455 appellate filing fee in one lump sum, should Soto choose to appeal this decision.

---

[1]  Two prior cases filed by Soto were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted. *See*  28 U.S.C. § 1915(g).  Those prior cases are: (1) *Soto v. Kimsel*, No. 2:05-CV-147 (W.D. Mich.); and (2) *Soto v. Alto*, No. 2:05-CV-146 (W.D. Mich.).

12

IT IS SO ORDERED.

Dated:  April 29, 2009

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 29, 2009, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

13